**Lydia H. BOWEN, Appellant,**

v.

**The STATE of Texas.**

**No. PD–1873–03.**

Court of Criminal Appeals of Texas.

May 4, 2005.

Samuel C. Bishop, Decatur, for Appellant.

Gregory P. Lowery, County Atty., Thomas J. Aaberg, Asst. County Atty., Decatur, Matthew Paul, State's Atty., Austin, for State.

## *OPINION*

KEASLER, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, JOHNSON, HERVEY, and HOLCOMB, JJ., joined.

Upon the close of evidence at her resisting arrest trial, Lydia Bowen sought a jury instruction on the defense of necessity. The trial judge refused this request. Affirming the trial judge's refusal, the Court of Appeals held that the self-defense statute, Penal Code section 9.31, demonstrated a legislative purpose to exclude the necessity defense under section 9.22(3). We disagree. Therefore, we reverse and remand.

### Factual and Procedural History

Responding to a disturbance call with an advisory of possible weapons present, Deputy Hamilton arrived at Lydia Bowen's rural home finding Bowen outside and becoming increasingly agitated and belligerent. Hamilton testified that Bowen's aggression became focused on him. After performing a field-sobriety test on Bowen, he informed both Bowen and her husband that he was arresting them for disorderly conduct and public intoxication. Hamilton further testified at trial that Bowen attempted to pull her arm away and head toward her house when Hamilton was placing the handcuffs on her. With the assis-

227 of other officers

tance of other officers, Hamilton took Bowen to the ground in order to effect the restraint and to allow Bowen to calm down. Once Bowen said that she would cooperate, Hamilton helped Bowen up from the ground and escorted her to his patrol car, where she again resisted. According to Hamilton, Bowen became belligerent, cursed, screamed, and ultimately kicked him in the shin.

Bowen's factual account differs. Bowen testified at trial that Hamilton kicked out her legs in executing the takedown, causing her terrible pain. According to Bowen, with the help of other officers, Hamilton forced her face into the ground and pinned her with his knees. Bowen admitted to struggling because she could not breathe. She also stated she screamed for help and that she was hurt. After restraining her, Bowen further testified that the officers lifted her directly from the ground to her feet using only the handcuffs and her forearms. Bowen felt that her "arm had popped out of the socket" as a result of being raised in that manner. Although admitting to kicking the officer, Bowen contested that it occurred while she was being lifted from the ground, not when being placed in the patrol car. She also contested that the kicking was intended to prevent Hamilton from taking her into custody. She alleged that the kicking was in response to the pain of being lifted in this manner and attempting to regain her balance.

Bowen was charged with resisting arrest, search, or transportation by using force against a peace officer. At the close of evidence, Bowen sought a jury instruction on self-defense and the justification defense of necessity. The trial judge refused to submit the necessity instruction, but did submit the instruction on self-defense. After a jury found Bowen guilty as charged, she was sentenced to pay a fine of $500.

## Court of Appeals

The Court of Appeals first found that Bowen had sufficiently admitted the commission of the alleged offense to entitle her to the justification defense instruction.[1] However, the court held that a legislative purpose existed to exclude the defense under the facts of this case. The court held that Penal Code section 9.31, stating that the use of force against another is not justified "to resist an arrest or search that the actor knows is being made by a peace officer ... even though the arrest or search is unlawful," provides legislative support to exclude the availability of a necessity defense. The court concluded that because there was no question surrounding whether Bowen was being arrested or that she knew Hamilton was a peace officer, section 9.31(b) precluded the defense of necessity as justification for the resisting arrest offense.[2] The Court of Appeals held that the trial judge properly refused to submit Bowen's necessity defense instruction. In light of this holding, we granted Bowen's petition for discretionary review.

## Analysis

Penal Code section 9.22 states:

Conduct is justified if:

(1) the actor reasonably believed the conduct is necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevent-

1. *Bowen v. State,* 117 S.W.3d 291, 297 (Tex. App.-Fort Worth 2003).

2. *Id.* at 298.

ed by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.[3]

The State argues that the Court of Appeals properly restricted the necessity defense's application and invites this Court to restrict the availability of the necessity defense according to the circumstances presented in each case. The State suggests the proper analysis begins with the underlying charged offense of resisting arrest defined by section 38.03. The argument continues that the use of force in resisting an arrest is limited by section 9.31, which provides in part:

> The use of force to resist an arrest or search is not justified:
>
> . . .
>
> (2) to resist an arrest or search that the actor knows is being made by a peace officer . . . even though the arrest or search is unlawful, unless the resistance is lawful under Subsection (c);
>
> . . .
>
> (c) The use of force to resist an arrest or search is justified:
>
> (1) if, before the actor offers any resistance, the peace officer . . . uses or attempts to use greater force than necessary to make the arrest or search; and
>
> (2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's . . . use or attempted use of greater force than necessary.[4]

The State contends that "since § 9.31(c) restricts resisting arrest to an officer's abuse of force then it must restrict resisting arrest, as a whole. And since the underlying offense in this case is resisting arrest then § 9.22 is restricted by § 9.31 as well." However, precedent and proper statutory construction prevent us from taking such a restrictive view of the necessity justification. This Court has had several opportunities to interpret section 9.22(3) since its enactment in 1973. In each case, we looked to the language of the charged offense to determine whether a legislative purpose plainly excludes the necessity justification.

In *Vasquez v. State*, we looked to the charged offense's statutory language.[5] There, we referred to the offense's statute and held that "[t]he legislature has not excluded the justification of necessity as a defense to the offense of possession of a firearm by a felon."[6] Without a recitation of the facts, in *Johnson v. State* we held that a necessity defense is available in a prosecution for an unlawful carrying of a weapon offense under section 46.02.[7] Overruling *Roy v. State*,[8] we disavowed the notion that permitting the defense of necessity would violate the intent of an offense's statute and was, therefore, tantamount to a legislative purpose to exclude the defense.[9]

Most recently, in *Spakes v. State*, we again utilized a plain-language interpretation of section 9.22 and the statute defining

---

3.  Tex. Pen.Code Ann. § 9.22 (Vernon 2004).

4.  Tex. Pen. Code Ann. § 9.31(b)—(c) (Vernon 2004).

5.  830 S.W.2d 948 (Tex.Crim.App.1992).

6.  *Vasquez*, 830 S.W.2d at 950 (citing Texas Penal Code § 46.05).

7.  *Johnson v. State*, 650 S.W.2d 414, 416 (Tex. Crim.App.1983), *overruled on other grounds*, *Boget v. State*, 74 S.W.3d 23 (Tex.Crim.App. 2002).

8.  552 S.W.2d 827 (Tex.Crim.App.1977).

9.  *Johnson*, 650 S.W.2d at 416.

the charged offense.[10] In determining whether Spakes was entitled to a necessity instruction on his escape charge, we refused to hold that an attempt to surrender once the immediate threat justifying the escape has ceased is a predicate for a necessity instruction's submission.[11] After noting the statutory elements of escape defined under section 38.07, we held that there was no apparent legislative purpose to exclude the justification. We further noted that "[t]he plain language codifying the necessity defense evinces a legislative intent that the defense apply to all offenses unless the legislature has specifically excluded it from them." [12] While the State in *Spakes* raised valid arguments as to why the necessity defense should be limited, these arguments were appropriate for the legislature, not the judiciary. We now turn to the statutory language presented in this case.

■ We begin by noting section 9.22's plain language indicates that the defense of necessity may be applicable in every case unless specifically excluded by the legislature.[13] To determine whether a legislative purpose exists to exclude the defense, we focus on the statute defining the charged offense. Section 38.03 defines the offense of resisting arrest:

(a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.

(b) It is no defense to prosecution under this section that the arrest or search was unlawful.

(c) Except as provided in Subsection (d), an offense under this section is a Class A misdemeanor.

(d) An offense under this section is a felony of the third degree if the actor uses a deadly weapon to resist the arrest or search.[14]

Section 38.03 does not limit the necessity defense's application because a legislative purpose to exclude the defense does not plainly appear in its text. On its face, we cannot glean any clear legislative purpose indicating that the necessity defense is not available.

■ The State's argument that the necessity defense's availability must be viewed in light of section 9.31 must also fail because it ignores that necessity and self-defense are separate defenses.[15] The State attempts to link the two defense statutes together by Bowen's use of force. However, Bowen's conduct does not merge the two defense provisions into a single, unified defense. While Bowen's use of force may limit her ability to invoke self-defense, it does not exclude a necessity defense to a resisting arrest offense as a matter of law. We have recognized the independence of separate defenses by holding that a defendant is entitled to the submission of every defensive issue raised by the evidence, even if the defense may be inconsistent with other defenses.[16] We

---

10. *Spakes v. State*, 913 S.W.2d 597 (Tex.Crim. App.1996).

11. *Id.* at 598.

12. *Id.*

13. *Id.*

14. Tex. Pen.Code Ann. § 38.03 (Vernon 2004).

15. *See Boget*, 74 S.W.3d at 31; *see also Johnson v. State*, 650 S.W.2d 414, 416 (Tex.Crim. App.1983).

16. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim.App.1996); *Thomas v. State*, 678 S.W.2d 82, 84 (Tex.Crim.App.1984).

reaffirm this principle by holding self-defense's statutorily imposed restrictions do not foreclose necessity's availability.

The Court of Appeals and the State seize upon the issue of whether Bowen knew she was being placed under arrest as a dispositive factor in assessing necessity's availability. But this reasoning assumes that the necessity defense is controlled by the self-defense statute's provisions addressing the use of force. Because we have held otherwise, Bowen's knowledge that she was being placed under arrest is irrelevant to determine whether she was entitled to a necessity instruction as a matter of law.

### Conclusion

Because the Court of Appeals held that Bowen sufficiently admitted to committing the offense and raised a necessity issue at trial, Bowen has satisfied the judicially imposed prerequisite to request a necessity instruction.[17] Therefore, the trial court erred in refusing Bowen's requested necessity instruction. We reverse and remand this case to the Court of Appeals for proceedings consistent with this opinion.

KELLER, P.J., filed a dissenting opinion.

COCHRAN, J., filed a dissenting opinion.

KELLER, P.J., dissenting.

By its nature, the "necessity" defense is a catch-all provision designed to afford a defense in situations where a defense is clearly warranted but is not afforded by any other statutory provision. I would hold that a necessity defense is not raised if the evidence presented merely raises an issue under another statutory defense.

Otherwise, entitlement to an instruction for certain defenses such as self-defense and defense of a third person would *always* also entail entitlement to an instruction on the defense of necessity. Submitting wholly redundant defenses would not aid the truth-finding function of the trial and risks confusing the jury.

A corollary of excluding the defense of necessity when it is wholly redundant of another defense is that the defense of necessity should be excluded when it is based solely upon *less* evidence than required for raising another defense. One of the elements of the defense of necessity is that "a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear."[1] Each defense to criminal prosecution contains the elements it does because the Legislature deemed it appropriate to require certain circumstances to be present before a defense could be invoked. Permitting the necessity defense solely upon *less* evidence than needed to raise another defense amounts to circumventing these legislatively prescribed requirements. Rather, in comparing the defense of necessity to another potentially applicable defense, the evidence should raise at least one circumstance of mitigating character that cannot be given full effect within the elements of that other defense.

Turning to the present case, we see that appellant received an instruction on self-defense. In the resisting arrest context, the self-defense statute requires among other things a showing that, before the actor offered any resistance, the officer used or attempted to use "greater force than necessary to make the arrest" and the actor reasonably believed her response was immediately necessary to protect her-

---

17. *See Young v. State,* 991 S.W.2d 835, 838 (Tex.Crim.App.1999).

1. Tex. Pen.Code § 9.22(3).

self against that type of force.[2] All of appellant's evidence regarding the violent nature of the arrest and the pain caused as a result could be given full effect in the context of that self-defense requirement. The evidence did not, for example, show that appellant had some peculiar infirmity or condition, unknown to the officer, that would have made the officer's reasonable conduct a threat to appellant's safety. Under the circumstances, appellant's evidence raised nothing more than the issue of self-defense to the use of unnecessary force. Consequently, the trial court did not err in declining to give an instruction on the defense of necessity.

COCHRAN, J., dissenting.

I agree with the majority that the statutory defenses of self-defense under Texas Penal Code, section 9.31, and necessity under section 9.22 are not mutually exclusive in the context of a resisting arrest prosecution. However, I do not think that the court of appeals said that they were.[1] Rather, both the trial court and the court of appeals stated that given the specific evidence in this particular case, appellant's defense was wholly encompassed by the trial court's instructions on self-defense. I agree with that conclusion and therefore respectfully disagree with the majority's holding.

In this case, the evidence concerning precisely how Officer Hamilton arrested appellant was hotly contested. In deciding whether the trial court erred in submitting instructions on a statutory defense, courts look to whether there is *any* evidence that raises all of the elements of that defense.[2] Thus, we look only to the evidence that supports submission of instructions on self-defense and necessity.

Appellant testified that she knew Officer Hamilton was attempting to arrest her, but she also testified that

* Officer Hamilton, in doing so, "kicked out her legs" when he executed a "takedown"; then he pushed her face into the dirt;

* She had not used any force against him before he kicked her legs out from under her;

* His kicking her legs and forcing her into the dirt caused her great pain;

* She struggled because she could not breathe with her face in the dirt;

* Officer Hamilton (and another officer) then lifted her up from the ground holding only the handcuffs and her forearms;

* The officers' use of force in lifting her up in this manner made her arm pop out of the socket;

---

**2.** Tex. Pen.Code § 9.31(c):
The use of force to resist an arrest or search is justified:
(1) if, before the actor offers any resistance, the peace officer (or person acting at his direction) uses or attempts to use greater force than necessary to make the arrest or search; and
(2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's (or other person's) use or attempted use of greater force than necessary.

**1.** *See Bowen v. State*, 117 S.W.3d 291, 295 (Tex.App.-Fort Worth 2003).

**2.** *Thomas v. State*, 678 S.W.2d 82, 85 (Tex. Crim.App.1984) (trial court erred in failing to submit requested charge on defense of necessity). In *Thomas*, this Court set out the general statement of the law:

It is axiomatic that a defendant is entitled to an affirmative defensive instruction on every issue raised by the evidence regardless of whether it is strong, feeble, unimpeached, or contradicted, and even if the trial court is of the opinion that the testimony is not entitled to belief.

*Id.* at 84.

\* She kicked at Officer Hamilton to make him stop lifting her up and holding her in this painful manner.

The thrust of all of appellant's testimony was that she did not use any force against Officer Hamilton until he used unnecessary, excessive, and very painful force against her. He started it by using unreasonable physical force to effect her arrest and she reacted only to protect herself. This testimony clearly raises an issue of self-defense under subsection 9.31(c).[3] Section 9.31(b), however, explicitly states that

The use of force against another is not justified ... to resist an arrest or search that the actor knows is being made by a police officer, ... unless the resistance is justified under Subsection (c).

Thus, the legislature has, in no uncertain terms, stated that one is not justified in using force to resist an arrest unless the "resistance" is justified under subsection (c). Subsection (c) is the section appellant invoked with her testimony and that is the section under which the able trial judge instructed the jury.

Both the trial judge and the court of appeals were very careful to limit their denial of a necessity instruction because of appellant's specific testimony. The court of appeals noted that

the trial court stated that [it] did not feel that the facts of the case raised the defense of necessity and that self-defense was the appropriate defensive submission under the evidence involving force against a police officer.[4]

The court of appeals upheld the trial court's assessment of the evidence and stated that it did "not believe that this admission [that she kicked the officer without intent to resist arrest] entitles her to submission of the necessity defense under the facts of this case."[5]

Appellant's position—with which the majority agrees—is that "I used force against Officer Hamilton's use of excessive force not to resist arrest, but simply to stop the pain. Therefore, I am entitled to an instruction on necessity." This argument proves too much. "Stopping the pain" or "preventing the injury" from the officer's use of excessive force is the very purpose of the statutory justification of self-defense to resisting arrest.[6] As the court of appeals aptly noted,

---

**3.** Subsection 9.31(c) of the Texas Penal Code provides

The use of force to resist an arrest or search is justified:

(1) if, before the actor offers any resistance, the peace officer (or person acting at his direction) uses or attempts to use greater force than necessary to make the arrest or search; and

(2) when and to the degree the actor reasonably believes that force is immediately necessary to protect himself against the peace officer's (or other person's) use or attempted use of greater force than necessary.

**4.** 117 S.W.3d at 295.

**5.** *Id.* at 297.

**6.** Appellant also makes a compelling argument concerning the "eggshell" defendant

who resists the use of perfectly reasonable, non-excessive force by the police officer because this reasonable force causes this particular defendant great pain although it would not cause a person of ordinary physical fitness pain. She claims that the defense of necessity exists for this situation. It does not. In that situation, the defendant is simply not guilty of a crime because she is not "intentionally" preventing a peace officer from effecting an arrest by using force against the officer. For example, appellant might have testified that Officer Hamilton was using perfectly reasonable force in pulling her arms behind her back to handcuff her. She, however, has horrible bursitis and the mere touching of her arm sent her into paroxysms of pain. She reacted *instinctively* against this excruciating pain by pulling away, kicking out, thrashing about, spitting, or whatever.

Accepting Appellant's argument would allow any person to obtain submission of a necessity defense based upon a struggle involving use of force against a police officer when that person knows they are being placed under arrest, by later claiming he or she was only trying to avoid being hurt.[7]

That is precisely the practical, though perhaps unintended, effect of the majority's holding in this case. And it is precisely for that reason that I cannot agree with the majority. The Legislature explicitly rejected this position by enacting subsection 9.31(b) which specifically precludes any justification for the use of force in resisting arrest except that justification set out in subsection 9.31(c).

Necessity, on the other hand, is a "choice of evils" defense.[8] The defendant intentionally or knowingly commits a criminal offense to avoid a greater evil or greater harm. To invoke such a defense, "the pressure must operate upon the mind of the defendant rather than upon his body."[9] The rationale behind this defense is that "the law ought to promote the achievement of higher values at the expense of lesser values, and sometimes the greater good for society will be accomplished by violating the literal language of the criminal law."[10]

That said, when might a necessity defense apply to a prosecution for resisting arrest? When the defendant intentionally and knowingly resists arrest because he has a higher public duty to perform which cannot be performed if he is arrested: the defendant must stop the passenger-laden train from crashing into the rock on the track; he must save the children from drowning on a raft that is floating down the swollen river; he must get his wife to the hospital before she has their first child in the backseat of the car; and so forth.[11] In other words, the necessity is a harm that is separate and independent from the use of force to resist arrest and "the desirability and urgency of avoiding the harm [the train wreck, the drowning, the backseat delivery] clearly outweigh ... the harm sought to be prevented by the law [resisting arrest] proscribing the conduct."[12]

As Professor LaFave points out

The defenses of self-defense and defense of others are also related to the defense of necessity, justifying intentional homicide or the intentional infliction of bodily injury in cases where it is necessary to save the life of, or to prevent injury to, the defendant or another. It has been said that self-defense and defense of oth-

---

This is not conduct that is intended to prevent her arrest, it is "pain avoidance" conduct which denies an element of the offense: the intent to prevent or obstruct the officer from effecting an arrest. For this defense, one needs no special jury instruction because it is the denial of an element of the crime, not the "confession and avoidance" of an element of the crime. Appellant did not testify that she was an "eggshell" defendant or that Officer Hamilton used only reasonable force. But to the extent that her testimony indicated that her conduct was motivated only by "pain avoidance," not an intent to prevent her arrest, she is still simply denying one of the State's essential elements using force with the intent to prevent or obstruct her arrest.

7. *Id.* at 296–97.

8. *See generally,* WAYNE R. LaFAVE, SUBSTANTIVE CRIMINAL LAW § 10.1 (2d ed.2003).

9. *Id.,* § 10.1(a), at 117.

10. *Id.* at 118.

11. Professor LaFave sets out numerous examples of the appropriate invocation of the "choice of evils" necessity defense. LaFAVE, § 10.1(c), at 121–24.

12. TEX. PEN.CODE § 9.22(2).

ers constitute a part of the law of necessity which has attained relatively fixed rules.[13]

That is, the statutory defense of self-defense is a codification of a subset of the necessity defense and permits the use of force against another under whatever specific circumstances are set out by the legislature. The Texas Legislature has specified the circumstances under which one may intentionally use force to resist arrest in subsection 9.31(c). And, in subsection 9.31(b), it has explicitly limited the intentional use of force to resist an arrest to *only* those circumstances set out in subsection (c).

Given these statutory provisions and the evidence in this case, I must agree with the trial court and court of appeals which both held that appellant was not entitled to a separate instruction on the defense of necessity. I, therefore, respectfully dissent.

---

**13.** *Id.*, § 10.1(c) at 121. Professor LaFave notes that "when the provision in the criminal code 'deals specifically and comprehensively with the use of force in defense of self, third persons, and premises,' a defendant 'who is unable to present an effective defense under these specific provisions is precluded from justifying his use of force under the general provision for competing harms.'" *Id.* n. 24 (quoting *State v. Crocker*, 506 A.2d 209 (Me. 1986)).