**Affirmed and Memorandum Opinion filed August 31, 2023.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-22-00066-CR

_____

**ROBERT ALEXANDER TUFT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 179th District Court
Harris County, Texas
Trial Court Cause No. 1654569**

## MEMORANDUM OPINION

A jury found appellant Robert Alexander Tuft guilty of the first-degree felony of murder. Tex. Penal Code Ann. § 19.02(b). The trial court found true the enhancement paragraph addressing appellant's prior conviction of aggravated assault with a deadly weapon. The trial court assessed punishment at imprisonment for 45 years. Tex. Penal Code Ann. § 12.32(a). Raising five issues on appeal, appellant challenges his conviction, arguing: (1) the evidence is legally insufficient

to support his conviction because no rational juror could have rejected his claim of self-defense; (2) he received ineffective assistance of counsel; (3) the trial court abused its discretion in denying a new trial; (4) there were multiple instances of jury-charge error; and (4) his constitutional Confrontation Clause rights were violated. After reviewing his challenges, we affirm.

## I.    BACKGROUND

Appellant drove his girlfriend, Mary Thigpen, to a local thrift store in Pasadena, to buy her clothes. According to her testimony, Thigpen took some items from the store, returned to the car, and while attempting to turn on the car rendered the car nonoperational. Appellant and Thigpen slept in the car that night waiting for help in repairing the vehicle. Thigpen testified that she and appellant were doing drugs while they were waiting, which appellant denied.

The next morning complainant Ernest Travis, Jr. saw the pair in the parking lot with the hood of the car open. He offered to assist and pulled in next to appellant's car. During his attempts to start the car, Thigpen asked complainant if he would help her get home because she no longer felt comfortable. Complainant agreed and Thigpen grabbed her bag and got into his truck. Thigpen told complainant that they needed to leave quickly.

When appellant realized Thigpen was leaving with complainant, he grabbed a gun that appellant maintains belonged to Thigpen (though she apparently left the gun in appellant's car after she got her bag) and began threatening complainant. Appellant fired his gun twice. The first shot he fired towards the ground and the second shot he fired towards appellant, striking complainant in his torso and killing him.

At trial, appellant argued he was acting in self-defense and defense of

another. He testified that Thigpen was his girlfriend and he reasonably believed that complainant was taking her against her will. He further testified that he believed complainant was using his truck to strike appellant, which appellant alleged justified his second, lethal shot towards complainant.

## II.    ANALYSIS

Because appellant's legal-sufficiency challenge would afford him the greatest relief if meritorious—acquittal as opposed to a new trial—we address it first. *See Campbell v. State*, 125 S.W.3d 1, 4 n.1 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (reviewing court will first address issues that, if sustained, require reversal and rendition of judgment, before turning to issues seeking remand); *see also* Tex. R. App. P. 43.3.

### A.    Sufficiency of the evidence

Appellant does not challenge the sufficiency of the evidence supporting the jury's finding that he (1) intentionally or knowingly caused complainant's death or (2) intended to cause serious bodily injury and intentionally or knowingly committed an act clearly dangerous to human life that caused complainant's death. Tex. Penal Code Ann. § 19.02(b)(1), (2). Rather, he argues there was no evidence supporting the jury's rejection of his claim of self-defense.

#### 1.  Standard of review

The Due Process Clause of the Fourteenth Amendment requires that a conviction be supported by legally-sufficient evidence. *Braughton v. State*, 569 S.W.3d 592, 607 (Tex. Crim. App. 2018); *see also Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979). In assessing the sufficiency of the evidence to support a criminal conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences

3

therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *see also Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). We measure the evidence by the elements of the offense as defined by the hypothetically-correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

Specific to self-defense, the court of criminal appeals has explained that the defendant bears the burden to produce some evidence supporting the defense, while the State bears the burden of persuasion to disprove the raised issues. *Braughton*, 569 S.W.3d at 608. We look not to whether the State presented evidence that refuted appellant's self-defense evidence, but to whether, after viewing all the evidence in the light most favorable to the prosecution, any rational factfinder would have found the essential elements of murder beyond a reasonable doubt and would have found against appellant on the self-defense issue beyond a reasonable doubt. *Id.* at 609 (citing *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991)).

The reviewing court must defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony, as the jury is the sole judge of those matters. *Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 899–900. Self-defense is a fact issue to be determined by the jury and the jury is free to accept or reject any defensive evidence on the issue. *Saxton*, 804 S.W.2d at 913–14.

### 2. Applicable law

The Penal Code provides that deadly force used in self-defense or in defense of another is a defense to prosecution for murder if that use of force is "justified." *See* Tex. Penal Code Ann. §§ 9.02 ("It is a defense to prosecution that the conduct

4

in question is justified under this chapter.").

The use of deadly force in self-defense is generally justified:

when and to the degree the actor reasonably believes the deadly force is immediately necessary: (A) to protect the actor against the other's use or attempted use of *unlawful deadly force*; or (B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

Tex. Penal Code Ann. § 9.32(a) (emphasis added). An actor's belief that deadly force was immediately necessary is presumptively reasonable if certain conditions are met including (as applicable in this case): (1) the actor knew or had reason to believe that the person against whom the deadly force was used was committing or attempting to commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery; (2) did not provoke the person against whom the force was used; and (3) was not otherwise engaged in criminal activity other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used. Tex. Penal Code Ann. § 9.32(b).

The use of deadly force in defense of another is justified if:

(1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 or 9.32 in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and (2) the actor reasonably believes that his intervention is immediately necessary to protect the third person.

Tex. Penal Code Ann. § 9.33.

A "reasonable belief" in this context is defined as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." Tex. Penal Code Ann. § 1.07(a)(42).

5

### 3. The verdict was supported by legally sufficient evidence

Appellant's claim of self-defense was that he shot complainant to (1) protect Thigpen from what he believed was an aggravated kidnapping and to (2) protect himself from complainant hitting him with complainant's truck.

#### a. Defense of a third person

The evidence to support appellant's claim of defense of a third party rests solely on appellant's testimony at trial. He testified that he believed Thigpen was being taken by complainant against her will and he saw a "scared look" in her eyes. He also testified that Thigpen told him that she did not want to leave with complainant. Appellant testified that Thigpen was strung out on heroin, and he was concerned that complainant might take advantage of her or traffic her. He also testified that he observed complainant order Thigpen out of appellant's vehicle and into the truck.

Thigpen did not support appellant's account. She testified that complainant did not take against her will, nor did he "lure her away" with the promise of drugs. She explained that she asked complainant to take her home because she did not feel comfortable anymore. She testified that she never told appellant that she was leaving against her will or was afraid of complainant. Thigpen testified that after she got into complainant's truck, appellant was standing at complainant's window arguing with complainant. He also stated that appellant was yelling at her to get out of the truck. After the first shot went off, she told complainant to "haul ass." She recalled that complainant had been trying to get the truck into gear and that somehow the vehicle shifted into gear and the truck was moving out of control. When asked on cross-examination if it was reasonable for appellant to be concerned about her welfare, she agreed that it was reasonable to be concerned but

not to shoot.

Measuring the evidence against the elements of a hypothetically-correct jury charge, appellant's claim of defense of another could only succeed if appellant reasonably believed that deadly force was immediately necessary to protect Thigpen against complainant's *use or attempted use of unlawful deadly force* or to prevent complainant's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.[1] *See Malik*, 953 S.W.2d at 240; Tex. Penal Code Ann. § 9.33.

Appellant argues on appeal that he "had a reason to believe" that complainant was attempting to commit aggravated kidnapping. However, appellant's testimony that Thigpen had a scared look in her eyes or told appellant that she did not want to leave with complainant is not sufficient to establish the imminent commission of aggravated kidnapping.[2] There was no evidence at trial that complainant might imminently commit an aggravated kidnapping or any of the other offenses identified by statute. *See* Tex. Penal Code Ann. §§ 9.32, .33, 20.04(a). Although appellant testified that he believed Thigpen was either being lured away or forced to leave against her will, there was no evidence (including appellant's testimony) that complainant used force of any kind, had a weapon,

---

[1] The jury charge stated: "A person is justified in using deadly force against another if he would be justified in using force against the other in the first place, as above set out, and when he reasonably believes that such deadly force is immediately necessary to protect a third person against the other person's use or attempted use of unlawful deadly force."

[2] The offense of aggravated kidnapping occurs if a person intentionally or knowingly abducts another person with the intent to: (1) hold her for ransom or reward; (2) use her as a shield or hostage; (3) facilitate the commission of a felony or the flight after the attempt or commission of a felony; (4) inflict bodily injury on her or violate or abuse her sexually; (5) terrorize her or a third person; or (6) interfere with the performance of any governmental or political function. Tex. Penal Code Ann. § 20.04(a). A person also commits the offense of aggravated kidnapping if the person intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense. Tex. Penal Code Ann. § 20.04(b).

threatened or attempted deadly force, or attempted any of the required crimes that justify the use of deadly force. Although appellant argues that the presumption of reasonableness applied to his use of deadly force, the presumption only addresses the determination of whether appellant's belief that force was immediately necessary was reasonable and does not eliminate the other statutory requirements establishing justification for his defense of another. *See* Tex. Penal Code Ann. § 9.32(b)(C).

We conclude there was legally-sufficient evidence supporting the jury's rejection of appellant's claim of defense a third person by finding that appellant was guilty of murder.

### b. Self-defense

Appellant's second defensive argument at trial was that he was justified in using deadly force against complainant because he "reasonably" believed that complainant was trying to strike him with complainant's truck. Appellant testified that complainant had plenty of room to just pull forward, but complainant put the truck in reverse and backed up approximately 20 feet, stopped, and pivoted the wheels towards Appellant.

Although appellant's testimony supported his claim of self-defense, the jury received other evidence which did not support his self-defense claim. First, Thigpen testified that appellant was on the driver's side of the truck and complainant never pointed the truck in the direction of appellant. There is a surveillance video that captured the incident; however the view is some distance away and partially obstructed. In the video, the truck can be seen parked next to appellant's vehicle such that the driver's side door of the truck was next to the passenger-side door of the car. Although interaction between appellant and complainant is not discernible, the truck can be seen backing out of the parking

spot (to move in a perpendicular direction) when suddenly the truck moves very quickly in reverse ultimately crashing into another truck in the parking lot before shifting into a forward gear. Appellant can be seen in the video between his car and the driver's side of the truck. The truck backs out around appellant and his vehicle and does not appear to be pivoting toward him.[3]

An eyewitness who testified at trial described that complainant was attempting to "jump" the battery on appellant's car when the situation escalated. Complainant disconnected the cables and shut the hood on his truck. At this point, the witness described appellant getting angry, waiving a gun and pointing it towards the windshield as he ran between the passenger side of the truck and the driver's side. When appellant was standing outside the driver's side of the truck, he fired his gun into the ground. The witness then heard, but did not see, the second gunshot. Although appellant argues this witness testimony supported his account, the witness never saw the truck move until after appellant had shot complainant. The witness did not corroborate appellant's testimony and belief that complainant was trying to strike him with his vehicle.

The jury was presented with contradictory testimony about appellant's self-defense claim. It was the province of the jury to assess the credibility of both witnesses. Because there was testimony supporting the jury's rejection of appellant's claim of self-defense, we conclude there was legally-sufficient evidence and overrule issue one.

## B.    Charge error

In issue four, appellant argues there was charge error because the charge did not: (1) instruct the jury that the State had the burden to disprove appellant's claim

---

[3] On cross-examination, appellant viewed the surveillance video and agreed that it does not support his account of the movements of the truck. He opined that the video had been altered.

of self-defense; (2) instruct the jury that the State had the burden to disprove appellant's claim of self-defense even if the presumption of reasonableness did not apply; (3) instruct the jury on necessity. Appellant also argues that (4) the supplemental jury charge was unnecessary and a comment on the evidence.

## 1.    Standard of review

A claim of jury-charge error is reviewed in two steps. *See Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). We first determine whether there is error in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If we find error, then we analyze that error for harm. *Id*. If a defendant does not properly preserve error by objection, any error in the charge "should be reviewed only for 'egregious harm' under *Almanza*." *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)).

Code of Criminal Procedure article 36.14 provides that the trial court "shall . . . deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case[.]" Tex. Code Crim. Proc. Ann. art. 36.14. "The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case." *Beltran De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). A proper jury charge therefore consists of an abstract statement of the law and the application paragraph(s). *See Vasquez v. State*, 389 S.W.3d 361, 366–67 (Tex. Crim. App. 2012). The abstract paragraphs of a jury charge serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge. *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). Each statutory definition that affects the meaning of an element of the offense must be communicated to the jury. *Villarreal v. State*, 286

S.W.3d 321, 329 (Tex. Crim. App. 2009). The application paragraphs then apply the relevant law, the definitions found in the abstract portion of the charge, and general legal principles to the particular facts of the case. *Vasquez*, 389 S.W.3d at 366.

### 2. Lack of instruction on State's burden

Appellant argues that the jury charge lacked an instruction explaining to the jury that the State had the burden of persuasion to disprove appellant's claim of self-defense. Although the jury charge did not include such an instruction, the record does not reflect that appellant requested this instruction or objected to its absence.

Appellant argues that the Texas Criminal Pattern Jury Charges—Criminal Defenses recommend the inclusion of an instruction stating: "The defendant is not required to prove self-defense. Rather the state must prove beyond a reasonable doubt, that self-defense does not apply to the defendant's conduct." Comm. on Pattern Jury Charges, State Bar of Tex., Texas Criminal Pattern Jury Charges—Criminal Defenses, PJC 32.2 (2018). However, the fact that the jury charge did not include all the instructions recommended by the Committee on Pattern Jury Charges does not automatically compel the conclusion that the trial court erred.[4]

A jury charge on self-defense need not state specifically that the State must disprove justification to prove murder. *Brotherton v. State*, 666 S.W.2d 126, 128 (Tex. App.—Houston [14th Dist.] 1983, pet. ref'd) (citing *Luck v. State*, 588 S.W.2d 371 (Tex. Crim. App. 1979)). The charge in this case required the jury to

---

[4] The Introduction to the Texas Criminal Pattern Jury Charges—Criminal Defenses explains that "the jury instructions in this volume have no official status. Appellate courts are unlikely to regard trial judges' refusal to use the Committee's jury instructions as reversible error." Comm. on Pattern Jury Charges, State Bar of Tex., *Introduction to* Texas Criminal Pattern Jury Charges—Criminal Defenses, Intro. (2018).

acquit appellant if it believed he was acting in self-defense or the jury had a reasonable doubt thereof. *See id*. The charge correctly stated that the burden of proof was on the State and contained instructions on the presumption of innocence.[5] *See id*. The charge correctly explained the law of self-defense with a proper instruction that the jurors could find appellant guilty only if they found beyond a reasonable doubt that appellant committed all the elements of murder and did not kill complainant in self-defense. *See id*. The charge also discussed the presumption of the necessity of deadly force and explained that the State had to prove beyond a reasonable doubt that the facts giving rise to the presumption do not exist.

Because the jury charge, as a whole, correctly instructs the jury on the State's burden of proof to disprove appellant's claim of self-defense, we conclude there is no error in the charge. *Luck*, 588 S.W.2d at 375 ("Viewing the charge as whole, the trial court did not err in failing to address the appellant's burden of production or in refusing to include an instruction in the charge that the State was required to disprove self-defense."); *see also Puckett v. State*, No.

---

[5] At the end of the self-defense section, the application paragraph provided the following:

> Therefore, if you find from the evidence beyond a reasonable doubt that the defendant, Robert Alexander Tuft, did shoot [complainant] with a firearm, as alleged , but you further find from the evidence, as viewed from the standpoint of the defendant at the time, that from the words or conduct, or both of [complainant] it reasonably appeared to the defendant that his life or person, or the life or person of Mary Thigpen was in danger and there was created in his mind a reasonable expectation or fear of death or serious bodily injury to himself or Mary Thigpen from the use of unlawful deadly force at the hands of [complainant] and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself or Mary Thigpen against [complainant's] use or attempted use of unlawful deadly force . . . then you should acquit the defendant on the grounds of self-defense or defense of a third person; or if you have a reasonable doubt as to whether or not the defendant was acting in self-defense or in defense of Mary Thigpen on said occasion and under the circumstances, then you should give the defendant the benefit of that doubt and say by your verdict, not guilty.

14-14-00313-CR, 2015 WL 5093197, at *6 (Tex. App.—Houston [14th Dist.] Aug. 28, 2015, no pet.) (mem. op., not designated for publication).

### 3.    Instruction if the presumption of reasonableness is not applicable

Appellant's second claim of charge error is that the jury charge was erroneous because it did not instruct the jury that the State had the burden of persuasion to disprove self-defense regardless of whether the statutory presumption of reasonableness applied. The record does not reflect that appellant requested this instruction or objected to its absence.

The jury charge instructs the jury as follows:

A person is justified in using deadly force against another if he would be justified in using force against the other in the first place, as above set out, and when he reasonably believes that such deadly force is immediately necessary:

> (1) to protect himself against the other person's use or attempted use of unlawful deadly force, or

> (2) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

The defendant's belief that the deadly force was immediately necessary is presumed to be reasonable if the defendant:

> (1) knew or had reason to believe that the person against whom the force was used:

>> (a) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the defendant's habitation, vehicle, or place of business or employment; or

>> (b) unlawfully and with force removed, or was attempting to remove unlawfully and with force, the defendant from the defendant's habitation, vehicle, or place of business or employment; or

>> (c) was committing or attempting to commit aggravated

13

kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery;

(2) did not provoke the person against whom the force was used; and

(3 ) was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

Appellant's argument here is premised on recommendations made in the Texas Criminal Pattern Jury Charges—Criminal Defenses which suggest the inclusion of the following language after the foregoing discussion of the presumption of reasonableness:

If you find the state has proved element 1, 2 or 3 listed above, the presumption does not apply and you are not required to find that the defendant's belief was reasonable.

Whether or not the presumption applies, the state must prove, beyond a reasonable doubt, that self-defense does not apply to this case.

Comm. on Pattern Jury Charges, State Bar of Tex., Texas Criminal Pattern Jury Charges—Criminal Defenses, PJC 32.2 (2018). In support of his argument for charge error, appellant offers no statutory authority or case-law citations reflecting that it was error for the trial court to omit an instruction reminding the jury that the State still had the burden of persuasion to disprove self-defense even if he did not qualify for the presumption. Although an instruction of this type may have been preferable, it was not necessary based on the remaining instructions in the charge. *See Savoy v. State*, No. 14-15-00637-CR, 2016 WL 6809168, at *5 (Tex. App.— Houston [14th Dist.] Nov. 17, 2016, pet. ref'd) (mem. op., not designated for publication).

The jury charge given contains the various elements required to establish a claim of self-defense. The reasonableness of the actor's belief that force or deadly

force was immediately necessary is only one element of the self-defense claim. And the presumption of reasonableness is just one method for establishing the reasonableness of a defendant's belief.[6] The jury charge specifically states that "if you have any reasonable doubt as to whether or not the defendant was acting in self-defense or in defense of [another] on said occasion and under the circumstances, then you should give the defendant the benefit of that doubt and say by your verdict, not guilty."

Reading the self-defense section of the charge as whole, the charge cannot be said to have placed the burden on appellant for proving that he had acted in self-defense. *See Luck*, 588 S.W.2d at 375. We conclude that the lack of an instruction that the State still had the burden of proof, even if appellant did not qualify for the presumption, was not error.

### 4.    Supplemental charge

Appellant next argues the trial court erred in giving the supplemental charge because it was unnecessary and a comment on the evidence.

During deliberations, the jury sent a note to the trial court stating it needed "further clarification if [appellant] was 'engaged in criminal activity' by simply knowing there was a firearm in his car, in possession of a firearm, and/or utilizing a firearm on his probation." In responding to the jury's question, the trial court stated on the record that the trial court would respond to the jury note by providing a supplemental charge and by reading part of the charge:

> By agreement of the parties, we've agreed to, A, supplement the jury charge with a definition of "felon in possession of a firearm" and what "possession" means; and B, for me to reread the part of the charge that references the significance of criminal activity. Correct?

---

[6] The jury charge instruction on the presumption of reasonableness is essentially identical to Penal Code section 9.32.

15

The parties agreed to the response and appellant lodged no objection.[7] The jury then received an additional page of instructions that included the following language:

> Our law provides that a person who has been convicted of a felony commits the offense of unlawful possession of a firearm by a felon if he intentionally or knowingly possesses a firearm:

> (1) after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later; or

> (2) after the period described by paragraph (1) at any location other than the premises at which the person lives.

The supplemental charge also included definitions of the term "possession" and "felony."

> Article 36.16 permits a supplemental charge as follows:

> After the argument begins no further charge shall be given to the jury unless required by the improper argument of counsel *or the request of the jury*, or unless the judge shall, in his discretion, permit the introduction of other testimony, and in the event of such further charge, the defendant or his counsel shall have the right to present objections in the same manner as is prescribed in Article 36.15.

Tex. Code Crim. Proc. Ann. art. 36.16 (emphasis added). Texas courts have long recognized that trial courts are allowed to respond to jury questions or correct errors in the charge. *See Smith v. State*, 898 S.W.2d 838, 854–55 (Tex. Crim. App. 1995); *Garza v. State*, 55 S.W.3d 74, 77 (Tex. App.—Corpus Christi 2001, pet. ref'd) (stating that if prerequisites of article 36.16 are met, supplemental charge

---

[7] The State argues that appellant should not be allowed to bring this claim of error because he requested the supplemental charge and induced the trial court to take action. Although the record reflects that appellant did agree to the plan proposed by the trial court, the record does not substantiate the State's characterization that the supplementation was made at appellant's request.

may be given); *see also Guajardo v. State*, 176 S.W.3d 402, 405 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (trial court did not err by providing jury with correct statutory definition of prior conviction in response to jury request); *Roberson v. State*, 113 S.W.3d 381, 385 (Tex. App.—Fort Worth 2003, pet. ref'd) (holding it was not error to submit a supplemental charge upon request from jury after judge was convinced charge was erroneous).

Appellant argues that the supplemental charge was unnecessary because the charge already included the definition. He states, "The charge specified that the only criminal conduct that is excluded from 'engaging in criminal activity' are Class C misdemeanors that are a violation of a law or ordinance regulating traffic." However, in the present case, the jury was requesting clarification as to what constituted criminal conduct because the jury was aware that appellant was restricted with respect to his possession of a gun due to a prior felony conviction. Having become aware that the charge did not provide all the information that the jury needed, the trial court properly supplemented the charge.

Appellant next argues that even if the trial court was required to respond to the jury's question, the felon-in-possession-of-a-weapon statute was a comment on the evidence, effectively endorsing the State's argument that the gun used by appellant was appellant's gun. At trial, appellant testified that the gun was not his, rather it belonged to Thigpen. Appellant also argues that his possession of the gun was excused as part of his of self-defense or defense of Thigpen.

Appellant is correct that the charge may not express an opinion as to the weight of the evidence, sum up the testimony, or discuss the facts or use any argument in the charge calculated to arouse the sympathy or passions of the jury. Tex. Code Crim. Proc. Ann. art. 36.14. However, the jury's question was a proper one. It requested further instruction on the law applicable to the facts of the case.

The applicable law is an appropriate subject for an additional or supplemental jury instruction. Tex. Code Crim. Proc. Ann. art. 36.14. The supplemental charge was not an improper comment on the evidence as it provided information needed by the jury to evaluate appellant's actions and conduct. As such, we hold that the trial court did not violate article 36.16 when, during the jury's deliberations, it submitted the supplemental charge that contained a proper statement on the law of unlawful possession of a firearm pursuant to Penal Code section 46. *See* Tex. Code Crim. Proc. Ann. art. 36.16; *see also* Tex. Penal Code Ann. § 46.04.

### 5. Necessity charge

Appellant also argues that he was entitled to a necessity instruction "so that the jury could determine that his possession of a gun was excused by necessity."

Necessity is a defensive issue offering justification for defendant's conduct. *See* Tex. Penal Code Ann. § 9.22 ("Conduct is justified if . . . the actor reasonably believes the conduct is immediately necessary to avoid imminent harm[.]"). Necessity is a defensive issue because necessity is a defense to prosecution. Tex. Penal Code Ann. §§ 9.02, .22; *see Taylor v. State*, 332 S.W.3d 483, 487 (Tex. Crim. App. 2011) (noting that mistake-of-fact is defensive issue because it constitutes defense to prosecution). The court of criminal appeals has explained:

> The justification defense of necessity applies when action is needed "immediately" (i.e., now) to avoid "imminent" harm (i.e., harm that is near at hand). Applying this interpretation in the context of self-defense and defense of a third person, force that is 'immediately necessary' to protect oneself or another from a person's use of unlawful force is force that is needed at that moment—'when a split second decision is required.'

*Henley v. State*, 493 S.W.3d 77, 89–90 (Tex. Crim. App. 2016). Though the law of necessity and self-defense overlap, necessity is a separate defense and is not part of the law of self-defense such that the trial court should have included it in the jury

charge absent a separate request. *See Bowen v. State*, 162 S.W.3d 226, 229 (Tex. Crim. App. 2005) (generally discussing that self-defense and necessity are two separate defenses and that request for self-defense instruction does not foreclose necessity instruction).

There is no duty on the trial court to instruct the jury sua sponte on unrequested defensive issues because an unrequested defensive issue is not the law "applicable to the case." *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998). A defendant cannot complain on appeal about the trial judge's failure to include a defensive instruction that he did not preserve by request or objection: he has procedurally waived any such complaint. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013). Because appellant did not request a necessity instruction in the trial court, he has not preserved this issue for appellate review. *See* Tex. R. App. P. 33.1(a).

Appellant alternatively argues that if we conclude that he was not entitled to a necessity instruction then the charge was erroneous. His argument is that without the necessity instruction relating to his possession of the gun that the presumption of reasonableness did not apply to the facts, i.e., because he was felon and had the gun in his possession, the presumption did not apply. However, appellant never objected to the inclusion of the presumption in the jury charge. In fact, appellant specifically requested that the trial reread the language regarding the presumption to the jury after they sent in their question seeking clarification about criminal activity.

Although on appeal appellant appears to take the position that his use of the gun constituted criminal activity, it was not his position in the trial court. In the trial court, appellant argued the gun was not in his possession. He explained that he only picked up the gun once he believed that Thigpen was being taken against her

19

will. Given the evidence and argument before the trial court, we cannot say it was error to instruct the jury on the presumption of reasonableness.

We overrule issue four.

## C.    Ineffective assistance of counsel

In issue two, appellant argues his counsel was ineffective for failing to: (1) object to the charge for the lack of an instruction that the State carried the burden of disproving self-defense; (2) request that the defense of necessity be instructed along with the presumption of reasonableness instruction; (3) object to the supplemental charge as a comment on the evidence; (4) object to the inclusion of the presumption of reasonableness instruction when the evidence precluded the finding that appellant's use of deadly force was presumed to be reasonable; (5) object to the admission of Dr. Lopez's autopsy report through Dr. Wolf's testimony as a violation of appellant's Sixth Amendment right to confrontation; (6) object to the 9-1-1 call on specific grounds; (7) investigate Thigpen's plea-bargain deal before testifying; (8) present legal authority permitting cross-examination to show Thigpen's penal interest; (9) re-urge his request once testimony supported a favorable ruling; and (10) investigate whether the Alamo Thrift Store surveillance video existed and whether it was available at the time of trial.

### 1. Applicable law

Evaluating claims of ineffective assistance of counsel under the Sixth Amendment involves a two-pronged test: (1) whether counsel was deficient, and (2) whether the defendant suffered prejudice as a result of counsel's error. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To establish that counsel's actions were deficient, the appellant must show, by a preponderance of the evidence, that counsel's actions fell below an objective

standard of reasonableness. *Id*. at 687–88; *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Courts should consider the reasonableness of counsel's actions at the time, rather than viewing such actions through the benefit of hindsight. *Id*. The Court should make this determination in light of all the circumstances in order to determine if the actions fall outside the wide range of professionally competent assistance. *Id*. at 690.

"Under most circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional." *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004). Given this fact, trial counsel should ordinarily be afforded an opportunity to explain his conduct before being denounced as ineffective. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). In the absence of such an opportunity, when faced with an undeveloped record on direct appeal, "[c]ourts 'commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it.'" *Okonkwo v. State*, 398 S.W.3d 689, 693 (Tex. Crim. App. 2013) (quoting *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005)). Counsel's actions are considered deficient only if the court finds, as a matter of law, that "no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App.

2011).

## 2. Analysis

Although appellant filed a motion for new trial, appellant did not raise his ineffective-assistance-of-counsel claims in the trial court. Therefore, there was no evidentiary hearing, and we do not have the benefit of an explanation from appellant's trial counsel as to what investigation he conducted and the strategy for his representation of appellant.

### *Failure to request necessity instruction*

Although appellant's trial counsel initially requested an instruction on necessity, he ultimately could not explain how it related to the self-defense instructions and why it was necessary. In his appellate briefing, appellant explains that the necessity instruction was needed to offer a justification for his possession of the firearm, not for the underlying offense—murder. He argues his counsel was ineffective for not researching and arguing for a necessity instruction and further challenges there was no trial strategy for not seeking such an instruction.

To demonstrate deficient performance based on trial counsel's failure to request a defensive jury instruction, an appellant must show that he was entitled to such an instruction. *Fuentes v. State*, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999). This court has previously held that "when deadly force in self-defense is the conduct that is allegedly 'immediately necessary' under section 9.22, the defense of necessity does not apply." *Darkins v. State*, 430 S.W.3d 559, 571–72 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). Therefore, appellant was not entitled to a necessity instruction as a justification or defense to murder.

However, appellant argues that his counsel should have sought a necessity instruction because the conduct allegedly "immediately necessary" was possession

of a gun. Appellant does not offer any authority for the proposition that he was entitled to a necessity instruction to justify his possession of a gun when he was not entitled to the instruction to justify his killing of complainant. However, assuming without deciding that appellant could have established entitlement to a necessity instruction,[8] the decision to forgo such an instruction may not be objectively unreasonable, as these decisions are frequently grounded in trial strategy. *Okonkwo*, 398 S.W.3d at 697. "[J]ust because a competent defense attorney recognizes that a particular defense might be available to a particular offense, he or she could also decide it would be inappropriate to propound such a defense in a given case." *Vasquez v. State*, 830 S.W.2d 948, 950 n.3 (Tex. Crim. App. 1992) (per curiam).

The evidence established that appellant had the gun in his hand before complainant tried to drive away and allegedly attempted to strike appellant with his truck. The evidence also established that even if appellant picked up the gun in response to his belief that Thigpen got into complainant's truck against her will, there was never any imminent physical harm or threat to Thigpen that would justify the need for a gun. *See* Tex. Penal Code Ann. § 9.22 ("Conduct is justified if . . . the actor reasonably believes the conduct is immediately necessary to avoid imminent harm[.]").

Given the nature of the evidence at trial, appellant's trial counsel may have reasonably concluded that his client was not entitled to the defense. Alternatively, he may have also decided that even if his client was entitled to the defense that calling further attention to his client's illegal possession of a gun would not aid appellant's defense. Without some indication of trial counsel's strategy, we cannot

---

[8] Appellant did not raise the necessity instruction and the specific reasons he needed the necessity instruction in the trial court or preserve it for appellate review, and we do not need to decide the entitlement issue for purposes of the ineffective-assistance-of-counsel claim.

meaningfully evaluate his reasons for not objecting. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) (finding that in most cases "the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional").

### *Other alleged charge errors*

Appellant argues that he received ineffective assistance of counsel because his trial counsel did not object to the supplemental charge, the lack of the two instructions recommended by the Pattern Jury Charge Committee, and the inclusion of the presumption of reasonableness. However, having already determined that the foregoing did not constitute jury-charge error, appellant's trial counsel cannot be said to be ineffective for not requesting or objecting when there was no error.

### *Autopsy Report*

Appellant asserts that his trial counsel rendered ineffective assistance of counsel by failing to object to the admission of the autopsy report into evidence when the medical examiner who wrote the report was not available to testify at trial. Appellant argues that his counsel's failure to object was rooted in a misunderstanding of the law and harmed him.

However, appellant does not explain how the admission of the autopsy report could have prejudiced his defense. The autopsy established that complainant's death was a homicide caused a single gunshot wound to his torso. Given that appellant admitted he shot and killed complainant, the autopsy report played a relatively unimportant role at trial. The disputed issue at trial was whether appellant acted in self-defense, an issue on which the autopsy report was not

relevant. Because appellant has not satisfied the second prong of the *Strickland* test, we cannot conclude his counsel provided ineffective assistance with respect to the autopsy report.

### *9-1-1 call*

Appellant further argues that his trial counsel was ineffective for failing to object to the admission of a 9-1-1 call made by the manager of Alamo Thrift Store. He argues that trial counsel's failure to object was the result of his lack of familiarity with the evidence citing a statement made by his trial counsel to the trial court when he originally objected to the admission of the call.

However, as appellant notes, after an initial discussion on the record, the call was not published to the jury until the next day giving trial counsel adequate time to research the issue and re-urge his objection. A careful reading of the record suggests that appellant's trial counsel did not raise more specific objections because he did not believe that any information in the call was inconsistent with appellant's defensive theory. Further, appellant never argues that trial counsel's decision not to object was inconsistent with any possible strategy. He further does not identify how he was prejudiced by the admission of the call.

### *Cross-examination of Thigpen*

Appellant argues that his trial counsel was ineffective for: (1) not investigating Thigpen's plea deal before testifying; (2) failing to present legal authority permitting cross-examination to show penal interest; and (3) failing to re-urge his request once testimony supported a favorable ruling. This claim of ineffective assistance of counsel addresses appellant's belief that his counsel should have done more to cross-examine Thigpen on five charges of aggravated robbery and a forgery charge which were dismissed by the State several months

before her testimony in the case.

As Thigpen was a critical eyewitness to the altercation between appellant and complainant, appellant sought to undermine Thigpen's credibility as a witness. Appellant's trial counsel was able to cross-examine Thigpen about the two charges for which she received deferred adjudication. He was able to cross-examine Thigpen on the issue of her credibility, which included not only her seemingly lenient deferred adjudication but also her drug usage and relationship with appellant. He was also able to introduce the terms of her plea-bargain deal. And, as the State argues, Thigpen's plea deal does not mention her testimony in appellant's criminal trial and Thigpen denies that the deferred adjudication she received was in exchange for her testimony (or favorable testimony).

Given the extensive discussions on the record relating to Thigpen's testimony, appellant does not argue that his counsel's actions were inconsistent with any reasonable trial strategy. Appellant's trial counsel may have concluded that he had already successfully impugned Thigpen's credibility. He also may have considered that cross-examination on the dismissed charges would not have had a meaningful impact on the jury's impression of Thigpen. Because appellant has not satisfied either prong of the *Strickland* test, we cannot conclude his counsel provided ineffective assistance with respect to his pursuit of cross-examination of Thigpen on her six dismissed charges.

### *Additional surveillance videos*

In his final claim of ineffective assistance of counsel, appellant argues his trial counsel did not investigate whether surveillance video from the Alamo Thrift Store existed, and whether it was available at the time of trial. Referring to trial counsel's motion for investigative funds, appellant assumes without any support that his trial counsel conducted no investigation into the existence or availability of

the video. Presented with an undeveloped record which offers no information as to what actions or strategy appellant's trial counsel took, we conclude appellant did not met either prong of the *Strickland* test with respect to additional surveillance video.

We overrule issue two.

## D.    Motion for new trial

In issue three, appellant argues that the trial court abused its discretion in denying his motion for new trial based on error in the supplemental jury charge. However, because we have already concluded the supplemental jury charge was not erroneous, we hold the trial court did not abuse its discretion in denying the motion for new trial.

We overrule issue three.

## E.    Confrontation Clause challenge

In issue five, appellant argues that the trial court's ruling that appellant could not question Thigpen about her five aggravated robbery charges and forgery charge that were dismissed violated his constitutional right to confront the witnesses against him. *See* U.S. Const. amend. VI.

Appellant wanted to question Thigpen about all the criminal charges against her, including the ones that were dismissed. Appellant sought to demonstrate that Thigpen was not a credible witness because most of her charges were dismissed and suggest that she received leniency in exchange for her testimony at appellant's trial. However, after lengthy discussions, appellant was able to cross-examine Thigpen about the two charges for which she received deferred adjudication. He was also able to cross-examine Thigpen on the issue of credibility.

However, to the extent that appellant sought to cross-examine Thigpen about

the charges that were dismissed, appellant never raised a constitutional challenge in the trial court. That is, he "did not argue that the Confrontation Clause demanded admission of the evidence." *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005). The trial court never had an opportunity to consider or rule on the Confrontation Clause argument. Because appellant did not preserve a Confrontation Clause claim at trial, he is precluded from raising it on appeal. *Id.* at 179–180; *see* Tex. R. App. P. 33.1(a)*; see also Golliday v. State*, 560 S.W.3d 664, 671 (Tex. Crim. App. 2018) ("Appellant did not clearly articulate a constitutional basis supporting the admission of the excluded evidence at trial. Consequently, he did not preserve a constitutional claim for appeal.").

Because appellant did not preserve this issue for appellate review, we overrule issue five.

### III. CONCLUSION

We affirm the trial court's judgment as challenged on appeal.


/s/    Charles A. Spain
Justice


Panel consists of Justices Wise, Bourliot, and Spain.

Do Not Publish —Tex. R. App. P. 47.2(b).

28